Kenneth M. Gutsch, ASBA 8811186
Richmond & Quinn, PC
360 "K" Street, Suite 200
Anchorage, Alaska 99501
PH:  (907) 276-5727
FAX: (907) 276-2953
E-mail:  kgutsch@richmondquinn.com
Attorneys for Defendant


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| HEIDI JURISCH,<br><br>                  Plaintiff,<br><br>    v.<br><br>FKA DISTRIBUTING CO., d/b/a<br>HOMEDICS, INC.; KROGER CO.,<br>d/b/a FRED MEYER and/or FRED<br>MEYER STORES, INC.; and WAL-MART<br>STORES, INC., d/b/a WAL-MART,<br><br>                  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:06-cv-00127<br>) (TMB)<br>)<br>)<br>)<br>)<br>) |


**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTIONS FOR RULINGS OF LAW**

### I.    INTRODUCTION

This  case  arises  out  of  a  house  fire.   Plaintiff

alleges  negligence  and  product  liability.   Heidi  Jurisch

("plaintiff")  alleges  that  a  HoMedics  fountain  caused  a  fire  in

her house.   However, the fountain and other critical evidence in

this case were destroyed, making it impossible for defendants to fully defend the case.

Plaintiff should not be allowed to use the Anchorage Fire Department's ("AFD") Captain Southwick ("Southwick") as an expert because he lacks the requisite foundation and because he and plaintiff disposed of all of the critical physical evidence in the case.

Further, plaintiff's case must be dismissed because the jury could only speculate as to whether the fountain caused the fire.

If the court denies the motion for summary judgment, the court should rule as a matter of law that (1) Southwick may not testify; (2) had the physical evidence at issue been preserved, it would have benefited defendants; (3) plaintiff may only recover for the fair market value of her lost property; (4) plaintiff may not recover for the sentimental value of her lost property; (5) plaintiff may not recover for emotional distress; and (6) plaintiff must specify the personal property for which plaintiff seeks compensation in this suit.

## II.  FACTUAL BACKGROUND

On Monday morning, April 12, 2004, the call for plaintiff's fire came at 9:17 a.m.; the AFD responded at 9:22 a.m.  <u>See</u>,

CAD, Ex. A.  Southwick's engine took primary responsibility for dousing the fire.  Southwick is not a fire investigator, and by his own admission, he is not an expert in determining the cause and origins of fires.  Ex. B at p. 16.  After dousing the fire, the firemen aired out plaintiff's house.

Southwick took six photos (attached) with a "cheesy" disposable camera.  Ex. G; Ex. B at p.14.

Southwick believed that the fire had started in the southwest corner of the living room.  Ex. B. at p. 94.  In the suspected area of origin there was a fountain on an end-table.  Ex. B at p. 11; Ex. H.  Southwick noticed the fountain's bunched up cord lying next to the couch on the carpet, and in the area of the bunching, he observed that some of the cord's insulation had been burned off.  Ex. B at p. 30.  He felt that the fountain's cord was one possible fire source that he could not rule out.  Ex. B at pp. 28, 94, 105.  However, Southwick's photographs do not show the cord.  Ex. G.  No photos of the cord exist.  Southwick frequently photographs the area of origin, but since he is not a fire investigator, he does not try to specifically photograph the point of origin.  Ex. B at p. 75.

Southwick could not say whether there were any candleholders on the end table.  Ex. B at p. 67.

The photos show that there was a cone shaped metal frame next to the fountain, which plaintiff confirmed was a candleholder. Ex. G at p. 1; Ex. E at p. 22. It is undisputed that plaintiff disposed of both these objects. The photos also show another object next to the fountain, which plaintiff could not identify, and which closely resemble a metal candleholder. See photo, Ex. N. Plaintiff had a cat and a dog, which she denied ever chewed on the fountain's cord. Ex. E at p. 103, 104.

Plaintiff arrived after the fire was extinguished. Southwick could not recall what information he had gotten from plaintiff. Ex. B at p. 34, 50.

The AFD left the scene around 10:16 a.m. Ex. B at p. 8. Southwick took the fountain with him back to the station so he could examine its model and serial number. Ex. B at pp. 31, 41. In his deposition he testified that the fountain was a potential cause of the fire, which he could not rule out. Ex. B at p. 107.

After the AFD left, on the day of the fire, State Farm's adjuster, Craig Mitchell, arrived and told plaintiff that the AFD should not have taken the fountain. Ex. E at p. 51; Ex. F. However, no one asked Southwick to preserve the fountain. Ex. B

at p. 91.  Mitchell took photos, but it was after the cleaning process had begun and the evidence was disturbed.  Exs. F and H. Mitchell noted that the scene had been compromised and no cause and origin investigation could be done.  Ex. F.

Southwick believes that he left the fountain on a workbench, and that the next shift of fireman threw the fountain in the trash.  Ex. B. at pp. 46, 47.

To prepare his report, Southwick entered information into a computer program based on menu options.  Ex. B at p. 26.  A few days after the fire, Southwick discovered that he had lost his report and had to redraft it.  Ex. B at p. 39.

In his report Southwick stated in response to the cause of the accident: "unspecified short circuit."  Ex. B at p. 28.  Ex. J.  He chose "unspecified" because he did not feel confident or competent enough to state that the fountain was the point of origin.  Ex. B at pp. 28, 79.  He could not say that that's how it happened, just that he could not rule it out.  Ex. B at p. 79.

On April 30, 2004, Southwick wrote that the fountain was a possible cause of the fire that he could not rule out:  "the decorative fountain that was on the end table was one possible cause which I could not rule out."  Ex. B at p. 107.

In her discovery responses, plaintiff has not articulated a theory of how the fountain caused the fire (i.e., defective design or defective manufacture). Ex. I at p. 4. Plaintiff merely states that the fountain should not cause fires. Id.

State Farm objects to the inclusion of its subrogation interest in this lawsuit. (State Farm paid its policy limits of $83,520 for structural loss; and $62,640 for lost personal property.) Ex. K. Plaintiff does not include State Farm's subrogation interest in plaintiff's damages case. Ex. E at p. 58.

### III STANDARD OF LAW

Summary judgment is appropriate when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the movant, plaintiff has the initial burden of establishing the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). All justifiable inferences are to be drawn in favor of defendants, the non-movants. Dufay v. Bank of America N.T. & S.A. of Oregon, 94 F.3d 561, 564 (9TH Cir. 1996). However, once a properly supported motion for summary judgment is made by plaintiff, the burden shifts to defendants to "set forth specific facts showing that there is a genuine issue for trial."

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTIONS FOR FULINGS OF LAW
Jurisch v. FKA Distributing Co., etc., et al., Case No. 3:06-cv-00127 (TMB)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A mere "scintilla" of evidence will not be sufficient to defeat defendants' motion; instead, plaintiff must introduce some "significant probative evidence" tending to support the complaint.  Id. at 252.  If defendants' evidence is merely colorable or not significantly probative, summary judgment should be entered in favor of plaintiff.  Eisenberg v. Ins. Col of North America, 815 F.2d 1285, 1288 (9th Cir. 1987).  Moreover, defendants' evidence must be admissible in order to defeat summary judgment.  Beyene v. Coleman Sec. Servs. Inc., 854 F.2d 1179, 1181-82 (9th Cir. 1988).

## IV.    ARGUMENT

### A.    Southwick's Testimony Should Be Excluded

Plaintiff should not be allowed to use Southwick as her expert because, by his own admission, he is not an expert, and his testimony would ratify his loss of evidence.

### 1.    Lack of Foundation

Under Federal Rule of Evidence 702, expert testimony may only be allowed if it assists the jury under limited circumstances.[1]

---

[1] Evidence Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

If an expert's testimony is not based on sufficient facts or is based upon unreliable methods or principles, it is deemed too unhelpful and unreliable to be admissible.[2]  Thus, the court acts as "gatekeeper" to ensure that unreliable expert testimony never reaches the jurors.[3]

The essential element in the court's analysis is to ensure that the expert's "factual basis, data, principles, or their application" are fundamentally reliable.[4]  In cases such as Daubert, the court may decide that a large statistical study is unreliable or that its results are too far removed from the facts at hand to be helpful.  Or, as in Kumho Tire, the court may determine that a particular expert's purely qualitative methodology is not a reliable means of arriving at the proffered conclusions.  Thus, the trial court must review the proffered testimony and make a determination regarding whether it is sufficiently reliable to send to the trier of fact.

Under Daubert, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."
[2] See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).
[3] Daubert, 590 U.S. at 588.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTIONS FOR FULINGS OF LAW
Jurisch v. FKA Distributing Co., etc., et al., Case No. 3:06-cv-00127 (TMB)

This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." In re Paoli R.R. Yards PBC Litig., 35 F.3d 717, 745 (3rd Cir. 1994). Additionally, failing to review key evidence is in and of itself grounds for excluding evidence.[5]

While Southwick has been trained as a firefighter, he only took one-half of one class dedicated to cause and origin investigation. Ex. B at pp. 5-6. Southwick does not consider himself an expert in the cause and origin investigation of fires. Ex. B at p. 16. Southwick is not a certified fire investigator, and is not sure of all of the special credentials required of a fire investigator. Ex. B at pp. 16, 50. He has not gone through the special academy training of a fire investigator or taken the tests required to be certified as a

---

[4] Kumho Tire, 526 U.S. at 150.

[5] See, e.g., Claar v. Burlington Northern R. Co., 29 F.3d 499 (9th Cir. 1994) (upholding exclusion of doctor's testimony due to his failure to review certain key medical records of the plaintiff's); Construction Aggregate Transport, Inc. v. Florida Rock Ind., Inc., 710 F.2d 752 (Cir. 1983)(questioning admission of expert economist who "not only failed to review available evidence of actual costs, but also failed to demonstrate why that evidence was not more accurate than the estimates upon which he relied"); Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2nd Cir. 2000)(Upholding exclusion of expert who failed to review several pieces of relevant and admissible evidence); Goodwin v. MTD Prod, Inc., 232 F.3d 600, 609 (7th Cir. 2000) (holding expert's opinion inadmissible because it was based on speculation); Leslie G. v. Perry & Associates, 43 Cal. App. 4th 472, 487 (Cal. App. 1996)(expert opinion regarding goodwill value cannot be based on assumptions unsupported by the record).

fire investigator. Ex. B at p. 16. Southwick is one of 60 captains among 300 AFD firefighters. Ex. B at p. 102.

Southwick candidly admitted that he would have called in the AFD's Fire Investigator had he known he would be asked to testify. Ex. B at pp. 87-88. He did not feel competent or confident to opine about the point of origin of the fire. Ex. B at p. 28.

Southwick could not say what the AFD's procedures were for fire investigation other than to use earnest efforts. Ex. B at p. 44. Southwick had heard of the National Fire Protectors' Association's fire investigation procedures, but could not say what the procedures were. Ex. B at p. 82.

Moreover, there is no evidence that Southwick ruled out candles as an alternative source of the fire. He did not recall seeing any candle receptacles on the end-table. Ex. B. at pp. 34, 67. He could not say what the objects on the end-table were. Ex. B at p. 67. Plaintiff acknowledges that there was at least one candleholder on the end-table right next to the fountain. Exs. B at p. 1; E at pp. 24, 25. The adjuster photos also show a second object on the end-table which looks like a candleholder. Ex. N.

Accordingly, there is insufficient foundation for Southwick's opinions as to the cause and origin of the fire and they should be excluded on that basis alone.

**2.    Spoliation**

According to the AFD's "Fire Prevention Operation Manual," in most cases evidence is not destroyed in fires and careful steps should be taken to preserve that evidence:

> 3.1.   Despite common belief, evidence is not destroyed in fires except in very rare cases. The form, shape, color, size, and weight may be altered, but evidence can still be identified upon trained examination. Therefore, protection of the fire scene and preservation of physical evidence must be a primary concern once life safety is secured and fire control is achieved.
>
> . . .
>
> 3.2.   Evidence cannot be used in court unless the Fire Investigator can establish a **chain of custody** by proving who found the evidence, where it was found, and that the evidence was not tampered with while in official custody.
>
> . . .
>
> 3.6.   When it is essential that evidence be moved, or if necessary fire fighting operations might damage evidence, cover the evidence or mark its location before moving it carefully to a secure location. Evidence that has been moved from its original location must be documented by photographs,

diagrams, and report narratives. Ex. Q,
hereto.

Here, the fire scene was not preserved, the critical physical evidence was not adequately documented.

Capt. Southwick lost the fountain (Ex. B at pp. 46, 47); and he initially deleted and had to redraft his report. Ex. B at p. 39.

The loss of the fountain has prevented defendants from examining it to assess whether the fountain had been misused/left running without water; whether the cord was a potential ignition source; whether the fountain's cord had been damaged by the plaintiff's cat or dog chewing on the cord or some other cause such as being placed under a furniture leg. Ex. D. at p. 2. The loss of the fountain's adapter and power strip have prevented defendants from examining them as potential ignition sources. Ex. D at p. 3.

Moreover, the plaintiff herself admits that all of the physical evidence in the fire scene has been thrown out, except for a three-wick candle that was sitting on a wooden chest situated to the left of the end-table. Exs. M and E at p. 108.

Even plaintiff tacitly acknowledges the material prejudice of the loss of evidence because she has not been able to develop a theory of how the fountain allegedly short circuited – her

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTIONS FOR FULINGS OF LAW
Jurisch v. FKA Distributing Co., etc., et al., Case No. 3:06-cv-00127 (TMB)

discovery responses do not articulate a theory of how the fountain caused the fire.  Ex. I at p. 4.

According to Glenn, plaintiff's disposal of the chest, end-table, sofa, and items on the end-table, has also prevented Glenn from measuring char depth, to allow his reconstruction of the fire's path, cause, and origin.  Ex. D.

Where a party or its expert destroys evidence, the expert's testimony is excludable.[6]

While Southwick took six photos, they are of extremely poor quality, and he himself was not certain that they were his photos[7]; they barely show the fountain, and do not show at all the fountain's cord where Southwick believes the fire started. Exs. D and G.  Moreover, while State Farm's adjuster took better quality photos, they were taken after the clean-up had started. Ex. E at p. 110, and the photo taken of the end-table by the

---

[6] See, Northern Assur. Co. v. Ware, 145 F.R.D. 281 (D. Me. 1993) (where plaintiff unintentionally destroyed evidence of a house fire, plaintiff was, nonetheless, remiss for failing to make reasonable arrangements to preserve the evidence for defendant's experts to examine, appropriate remedy was to preclude plaintiff from presenting the testimony or conclusions of its expert); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263 (9th Cir. 1993) (where automobile involved in accident was innocently destroyed after plaintiff's expert inspected it, but before defendant's expert had opportunity for inspection, the appropriate sanction was to preclude expert from testifying and to exclude any evidence derived from the inspection); Inbass v. Gen. Motors. Corp, 150 F.3d 842 (8th Cir. 1998)(where the plaintiff's expert had the opportunity to inspect an automobile involved in an accident, but the automobile was innocently destroyed prior to defendant's expert being

adjuster shows the cone-shaped candleholder in a different location on the floor. Ex.H at p. 1 with Southwick's photo of Ex. G at p. 1; see also Ex. D at p. 3. Indeed, the adjuster's April 12, 2004 log note states that a cause and origin investigation was no longer feasible because the fire scene had been compromised. Ex. F.

Furthermore, photographs alone are not a substitute for an opportunity to inspect a fire scene or the objects allegedly involved in a fire. See, e.g., Dillon v. Nissan Motor Co., 986 F.2d 263, 268 (8th Cir. 1993) (photographs which were not comprehensive and fail to document "crucial areas" cannot replace opportunity to inspect vehicle and thus, it was "certain beyond doubt" that destruction of evidence prejudiced defense); State Farm Fire & Cas. Co. v. Frigidaire, 146 F.R.D. 160, 163 (N.D. Ill. 1992) (photographs. . . are not a sufficient substitute for the dishwasher in its original post-fire condition").

Therefore, plaintiff should not be allowed to call Southwick to opine about the cause and origin of the fire for

---

given an opportunity to inspect the vehicle, the appropriate remedy was to exclude expert evidence offered by plaintiff).
[7] Ex. B at p. 57, 58.
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTIONS FOR FULINGS OF LAW
Jurisch v. FKA Distributing Co., etc., et al., Case No. 3:06-cv-00127 (TMB)

the additional reason that both Southwick and plaintiff have lost all of the critical physical evidence in the case.

In <u>Unigard Security Insurance Company v. Lakewood Engineering & Manufacturing Corporation</u>, 982 F.2d 363 (9th Cir. 1992) a Seattle fire department arson investigator concluded that the cause of a fire on a yacht was a short in the yacht's wiring near the radar. <u>Id.</u> at 365. Unigard's expert, however, determined that the cause of the fire was a space heater made by the defendant that, despite a warning label on the heater saying not to leave it unattended, had in fact been left on and unattended by the owner of the yacht. <u>Id.</u> Unigard paid the claim brought by the insured. Unigard's adjuster then decided that there was insufficient basis for a subrogation claim because of the warning on the space heater not to leave it unattended. <u>Id.</u> Unigard then disposed of the heater and the yacht. Unigard later attempted to file suit against the manufacturer of the heater based on strict product liability and negligence. <u>Id.</u>

Lakewood moved for summary judgment based on an affidavit from its expert that investigation of the heater and the vessel's remains were necessary to determine the cause of the

fire.  The court excluded the evidence of Unigard's expert and granted the motion for summary judgment based on speculation.

The Ninth Circuit held that the District Court had the inherent authority to preclude Unigard's use of expert testimony relating to whether the heater started the fire, and to find that the destruction of key evidence had rendered Lakewood's **"full defense"** of the case impossible.  Id. at 368.  "These findings provide ample support for the court's discretionary conclusion that allowing Unigard to introduce the testimony of its expert would unfairly prejudice Lakewood and thus preclude the court's ability to conduct a fair trial." Id. at 368.

The court noted:

> In this case, Unigard's destruction of evidence was not in dispute; **it precluded Lakewood from any opportunity to inspect the evidence; and it rendered unreliable virtually all of the evidence that a finder of fact could potentially consider.** Given these factors, it was within the district court's discretion to determine that a rebuttable presumption against Unigard would have been insufficient to cure the prejudice arising in the context of this case.[8] Cf. Welsh v. United States, 844 F.2d 1239, 1246-47 (6th Cir.1988) (factually specific, case by case analysis necessary to determine proper penalty for destruction of evidence), cited in Akiona v. United States, 938 F.2d 158, 161 (9th Cir.1991), cert. denied, -- U.S. --, 112 S. Ct. 1567, 118 L.Ed.2d 212 (1992).  See also Fire Ins. Exch. V. Zenith Radio Corp., 103 Nev. 648, 747 P.2d 911,

---

[8][5] Id. at 369.

914 (1987) (exclusion of expert testimony for plaintiff's destruction of evidence, rather than imposition of a rebuttable presumption, was not an abuse of discretion because "[a]ny adverse presumption which the court might have ordered as a sanction for the spoliation of evidence would have paled next to the testimony of the expert witness").

Like the case in Unigard, the destruction of key evidence in this case has rendered a "full defense" impossible. Id. at 368. The destruction of key evidence has rendered unreliable virtually all of the evidence that a finder of fact could potentially consider. Id. at 369. A rebuttable presumption against plaintiff would be insufficient to cure the prejudice. For example, without the key physical evidence for the experts and jury to examine, defendants can only ask the jury to speculate as to: whether plaintiff's dog or cat might have chewed on the cord (there was a chew toy in the dog's bed nearby (Ex. H at p. 10)); whether plaintiff may have left a burning candle near the fountain (which plaintiff denies, although plaintiff admits there was at least one candleholder on the end-table, and the adjuster photos indicate a second candle sitting on the end-table. Ex. G at pp. 1, 2 and Ex. N. Without the fountain, the jury can only speculate whether plaintiff may have misused the fountain by failing to maintain adequate water levels; failing to turn off the fountain when it was not in use;

or whether there was a problem with the fountain's transformer, or the socket extender into which the fountain's transformer was plugged.

Although <u>Unigard</u> involved a plaintiff who was a subrogated insurer, the basis for the court's ruling was that the prejudice to the defendant was so material, a fair trial could not be conducted. <u>Id.</u> at 368. Here, a fair trial cannot be conducted because defendants' ability to defend has been materially prejudiced by the loss of evidence. Ex. D.

Further, plaintiff bears significant fault in the loss of evidence. While the AFD disposed of the fountain, plaintiff could have, but failed to retrieve the fountain back from the AFD after the State Farm adjuster told plaintiff that the AFD should not have taken the fountain. Plaintiff disposed of the wooden chest, end-table, sofa, transformer, socket extender, candleholder on the end-table, plant pot, and an unidentified object near the fountain which resembles a candlestick holder after she knew that the fountain was suspected. Plaintiff did not inform defendants of the fire until almost 11 months after the fire, even though she was informed that the fountain was suspected as of the day of the fire. Ex. O.

## V. PLAINTIFF'S CASE SHOULD BE DISMISSED

Plaintiff has the burden of proving that there was a product defect, and/or negligence by defendants, which proximately caused the subject fire. Traditional tort principles of proximate cause apply to products liability cases.[9]

In <u>Alvey v. Pioneer Oilfield Services</u>, 648 P.2d 599 (Alaska 1982), an employee of a drilling contractor for Exxon, Alvey, was working on a crew positioning an oil rig over certain holes on an Exxon drill site. The well covers had been removed to facilitate alignment. When the crew finished centering the rig, Alvey went to retrieve a cover, which he mistakenly assumed was one that had been taken from the drill site. The cover rested atop a survey hole. When, Alvey picked up the cover, unaware that it protected the survey hole, he fell into the open well. <u>Id</u>. at 600.

The cover was one of six that had been constructed by Pioneer Oilfield Services, Inc. at Exxon's request. An Exxon foreman had furnished Pioneer with a rough sketch and had asked that the covers be strong enough to be walked on and be made so

---

[9] Restatement (Third) of Torts:  Products Liability, sec. 15, comment a. ("*Requirement of causal connection between defect and harm.*  The basic rules

that they could be located in the snow.  Pioneer delivered the covers as specified and had no other involvement with the drilling on the site.  Id. at 600.

Alvey sued Pioneer and others.  His complaint alleged that Pioneer knew or should have known that Alvey was working in the area of the test hole and would have no knowledge of the opening; Pioneer knew or should have known of the danger presented by the hole; and Pioneer failed to warn Alvey of the danger, either personally or by other means.  Id.

The Alaska Supreme Court affirmed summary dismissal of the case because the plaintiff had failed to offer any evidence of proximate cause.  The court noted that the mere fact that the fall occurred while Alvey was trying to remove a cover made by Pioneer was not sufficient to withstand summary judgment on the proximate cause issue, because nothing in the design or construction of the cover had caused Alvey's fall.  Id.  ("Alvey has not alleged facts to show that the design or construction of the cover was the proximate cause of his fall and resultant injuries. . . . This is not demonstrated by the mere fact that the fall occurred in the course of Alvey's attempt to move the cover.")

---

governing causation in products liability litigation are the same as those

Similarly, the mere fact that the subject fountain was in the area where the fire started, is not evidence that the fountain's design or manufacture caused the fire, especially here, where there is evidence of alternative causes such as candles, potential damage to the subject cord, or product misuse.

The jury cannot speculate as to causation. In <u>City of Fairbanks v. Schaible</u>, 375 P.2d 201, 204 (Alaska 1962)(rev'd on other grounds, <u>Scheele v. City of Anchorage</u>, 385 P.2d 583 (Alaska 1963), plaintiff's decedent died of asphyxiation during a fire in a building belonging to defendant Lathrop Company. Plaintiff maintained that the death was proximately caused by smoke invading decedent's apartment through a negligently maintained ventilation system. However, plaintiff had insufficient proof that the decedent's death was, in fact, caused by smoke passing through the ventilation system, as opposed to smoke passing through the hallway. The court concluded that plaintiff's proof of causation was speculative and, as a matter of law, plaintiff's claim failed:

> That the asphyxia could have been caused by smoke
> from the venting system is possible. But it is
> at least equally possible that the smoke came not
> from there but rather from the hallway and then

governing tort law generally.")
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTIONS FOR FULINGS
OF LAW
<u>Jurisch v. FKA Distributing Co., etc., et al.</u>, Case No. 3:06-cv-00127 (TMB)
-21-

through the apartment doorway. The walls along the stairs and hallways were covered with plywood wainscoting, and a witness observed that the fire was concentrated and burning intensely in this wainscoting and up the stairs from the second to the third floor where decedent's apartment was located. An occupant of the apartment next to decedent's testified that the fire was in the hall, that the hall was full of smoke, and that smoke was coming in her apartment around the sides of the door. There was evidence that Mrs. Schaible's apartment door had been opened during the fire. There was no testimony that smoke came out of the vents in any of the apartments.

**A mere possibility of causation is not enough. When the matter remains one of conjecture, as it does here, the trial court must find against the party carrying the burden of proof.**

Id. at 204 (Emphasis Added).[10]

Here, plaintiff herself cannot articulate a theory as to how the fountain allegedly started the fire, other than to say that it happened and that fountains should not start fires. Ex. I at p. 4.

_____

[10] See also Scott v. Henrich, 978 F.2d 481 (9th Cir. 1992) (the verdict of a jury cannot rest on mere speculation); Browne v. McDonnell Douglas Corp., 698 F.2d 370, 371 (9th Cir. 1982) (where proximate cause is at issue, plaintiff can not defeat a motion for a directed verdict if the evidence merely suggests the possibility that proximate cause exists or if causation is a matter of speculation); Neely v. St. Paul Fire and Marine Ins. Co., 584 F.2d 341 (9th Cir. 1978) (directed verdict is appropriate where causation is a matter of speculation); Wolf v. Reynolds Elec. and Eng'g Co., 304 F.2d 646 (9th Cir. 1962)(where the evidence leaves the cause of an accident uncertain, the jury is not permitted to speculate in choosing one of alternative possibilities); Rexall Drug Co. v. Nihill, 276 F.2d 637 (9th Cir. 1960) Prosser and Keeton, *The Law of Torts*, § 41, at 269 (5th ed. 1984)(when an issue remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant).

With all the critical evidence gone and with no theory of liability, defendants are placed in the untenable position of divining a defense. The circumstances here, through no fault of the defendants, have made it impossible for the court to put on a fair trial.

The jury can only speculate whether plaintiff's dog or cat chewed and damaged the cord; whether the candle(s) on the end-table next to the fountain, whether there was misuse of the fountain by failing to maintain adequate water levels.  Ex. L, at pp. 2, 4.

While plaintiff claims that she never saw her pets chew on the cord; that she had not burned a candle on the end-table, and that she never left the fountain running, defendants are not able to analyze the physical evidence to rebut plaintiff's allegations.

The jury cannot be allowed to speculate.  Therefore, the case must be dismissed.

## VI. ALTERNATIVE REQUESTS

If the court denies defendants' motion for summary judgment, the court should rule as a matter of law (1) that Captain Southwick may not testify; and (2) that had plaintiff

preserved any physical evidence at issue, it would have benefited defendants.

Further, the court should rule that (3) plaintiff may only recover for the fair market value of her lost property; (4) plaintiff may not recover for the sentimental value of her lost property; (5) plaintiff may not recover for emotional distress; and (6) plaintiff must specify the property damage for which plaintiff seeks compensation.

### VIII. SENTIMENTAL VALUE

With respect to sentimental value, this court is governed by Landers v. Municipality of Anchorage, 915 P.2d 614 (Alaska 1996). In Landers, the court specifically held that it would follow Restatement (Second) of Torts § 911. In analyzing the issue, the court stated:

> The value to the owner is the value based upon actual monetary loss resulting from the owner being deprived of the property. **A number of courts have held, and the Restatement (Second) of Torts takes the position, that this does not include "any sentimental or fanciful value." Rather, value to the owner may be based on such things as the cost of replacement, original cost, and cost to reproduce.** To this effect, Restatement (Second) of Torts § 911, comment e states that if the subject matter cannot be replaced, "as in the case of a destroyed or lost family portrait, the owner will be compensated for its special value to him, as evidenced **by the original cost**, and **the quality and condition at the time of loss.**" In

applying such a standard to the present case, damages for the loss of the photographs would include the **cost of purchasing and duplicating the film, while damages for the loss of videotapes would include the cost of purchasing blank videotapes.**

Based on our prior decisions and the Restatement (Second) of Torts § 911, and in the absence of a claim for intentional infliction of emotional distress or another intentional tort, we conclude that the appropriate measure of damages applicable in the instant case is that found in § 911 of the Restatement (Second) of Torts, namely, the value of the items to the owner. **We thus decline to adopt the minority view which allows damages for loss of items of personal property to be based on sentimental and emotional value.** This holding is in accordance with our prior case law and the Restatement (Second) of Torts, and ensures that such damages will not be based on considerations which are difficult to measure.

<u>Landers</u>, 915 P.2d at 618-20.  (Emphasis added.)

Thus, under <u>Landers</u>, plaintiff cannot recover for sentimental and emotional value.

### IX. EMOTIONAL DISTRESS

The general rule is that damages for negligent infliction of emotional distress ("NIED") may only be awarded in narrow circumstances, and only if the distress is serious or severe.

This is not one of these narrow exceptions.  Alaska only allows NIED claims if the victim is a bystander who directly **witnesses physical injury** or if the victim is owed a **preexisting legal duty** by the tortfeasor.  <u>Hagen Insurance, Inc. v. Roller</u>,

139 P.3d 1216, 1218 (Alaska 2006).  The Supreme Court narrowly defines "preexisting legal duty" as being in a fiduciary or agreed-upon heightened duty in a contract.  Hancock v. Northcutt, 808 P.2d 251, 257-59 (Alaska 1991) (no recovery for emotional distress due to defective concrete work which ruined house); Chizmar v. Mackie; 896 P.2d 196, 201 (Alaska 1995); Hinsberger v. State of Alaska. 53 P.3d 568, 571 (Alaska 2002).

Moreover, a general duty to the public (such as that of a manufacturer to the public at large) is not specific enough to qualify under the preexisting duty exception. Kallstrom v. U.S. 43 P.3d 162, 166 (Alaska 2002).  Therefore, plaintiff may not be allowed to recover for emotional distress.

## IX. FAIR MARKET VALUE

Plaintiff claims she is entitled to the replacement value of her lost personal property.

Liability for plaintiff's damaged personal property is governed by City of Seward v. Afognak Logging, 31 P.2d 780 (Alaska 2001).  In Afognak, the court ruled that "the owner of negligently damaged property may ordinarily recover either its lost value or its reasonable cost of repair and residual loss in value, whichever is less." Id. at 787.  Additionally, damages are "measured by the value of each item at the time it was

damaged . . . ." Rollins v. Leibold, 512 P.2d 937, 944-45 (Alaska 1973). Thus, the court should rule that plaintiff may only recover the fair market value of items she claims as losses.

## X. SPECIFICATION OF PROPERTY DAMAGED

Plaintiff received a policy limits insurance payment for property damage of $62,640, but claims approximately $40,000 more in un-reimbursed personal property losses. State Farm has requested that its subrogation interest not be included in the suit, and plaintiff has testified that she is not claiming State Farm's subrogation interest as part of her damages. State Farm Ltr, Ex. K; Ex. E at p. 58.

Plaintiff may not claim as damages the subrogated interest of State Farm. Ruggles v. Grow, 984 P.2d 509, 512 (Alaska 1999).[11]

---

[11] In Ruggles v. Grow, 984 P.2d 509, 512, the Supreme Court made clear that a subrogated insurer may elect not to preserve its subrogated interest, and that such election precludes the plaintiff from including that interest in the lawsuit. ("But the subrogated claim belongs to the insurer. The insurer may pursue a direct action against the tortfeasor, **discount and settle its claim,** or **determine that the claim should not be pursued**. . . . When Allstate instructed Ruggles not to pursue its subrogation claim, **Ruggles lacked authority to pursue it**. Grow was entitled to raise this lack of authority, for it represented a legitimate partial defense to Ruggles' claim." Id. at 512. (Emphasis added.)

Plaintiff however, refuses to identify the personal property for which she is claiming damages in this suit. See Ex. P. at p. 4. This makes it impossible for defendants to challenge the plaintiff's valuations of her property; or requires that defendants challenge the valuations of all of the personal property that plaintiff claims she has lost.

Under Alaska law, the award of damages may not be based on speculation.[12] Therefore, the court should rule that plaintiff may not claim the personal property in this suit unless she first specifies the property she claims as a loss.

## X. CONCLUSION

For the above stated reasons, defendants request that their motion for summary judgment be granted.

In the alternative, defendants request that plaintiff be precluded from presenting any expert evidence regarding the cause of the fire, and that the jury be instructed to presume that had the physical evidence been preserved, it would have favored the defendants.

Defendants further request rulings that plaintiff may not obtain damages for sentimental value or emotional distress

---

[12] City of Fairbanks v. Nesbett, 432 P.2d 607, 616 (Alaska 1967) (award of damages may not be speculative or conjectural; jury must have reasonable basis upon which to assess damages by a fair degree of certainty).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTIONS FOR FULINGS OF LAW
Jurisch v. FKA Distributing Co., etc., et al., Case No. 3:06-cv-00127 (TMB)

-28-

damages; and that plaintiff is limited to the fair market of the items lost.

Also, the defendants request that plaintiff be required to specify the personal property for which plaintiff seeks compensation in the suit so that defendants can fairly defend against those claims.

Dated this 7th day of December, 2006, at Anchorage, Alaska.

                    RICHMOND & QUINN
                    Attorneys for Defendant
                    FKA DISTRIBUTING CO. d/b/a
                    HOMEDICS, INC.


                    s/Kenneth M. Gutsch
        By:    _____
                    Kenneth M. Gutsch
                    RICHMOND & QUINN
                    360 K Street, Suite 200
                    Anchorage, AK 99501
                    Ph: (907) 276-5727
                    Fax: (907) 276-2953
                    kgutsch@richmondquinn.com
                    Alaska Bar No. 8811186

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 7th day of December, 2006, to:

Howard J. Meyer, Jr., P.C.
Walther & Flanigan
1029 W. 3rd Ave, Suite 250
Anchorage, AK 99501


s/Kenneth M. Gutsch
_____
        RICHMOND & QUINN

2222\001\Pld\MSJ