Kenneth M. Gutsch, ASBA 8811186
Richmond & Quinn, PC
360 "K" Street, Suite 200
Anchorage, Alaska 99501
PH:  (907) 276-5727
FAX: (907) 276-2953
E-mail:  kgutsch@richmondquinn.com
Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HEIDI JURISCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FKA DISTRIBUTING CO., d/b/a ) | |
| HOMEDICS, INC.; KROGER CO., ) | |
| d/b/a FRED MEYER and/or FRED ) | Case No. 3:06-cv-00127 |
| MEYER STORES, INC.; and WAL- ) | (TMB) |
| MART STORES, INC., d/b/a WAL- ) | |
| MART, ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND CROSS-MOTION FOR PROTECTIVE ORDER AND COMPUTATION OF DAMAGES**

COME NOW defendants, and hereby oppose plaintiff's motion to compel, and HoMedics' cross-moves for a protective order with regard to certain documentation sought by plaintiff.

**Mootness**

The discovery requests are moot.  Defendants have pending a motion for summary judgment in this case establishing that

all claims should be dismissed due to the wholesale destruction of the subject fountain and its components, and all material physical evidence. Plaintiff claims that Captain Southwick opines that the only logical source of the fire was the fountain. Yet, as noted in defendants' motion for summary judgment, Captain Southwick is not an expert and has not been trained in the cause and origin of fires. Notably, Captain Southwick did not consider himself to be an expert in fire causation. Ex. A at p 16. Had he known that he would be asked to testify, he would have called in the fire inspector. Ex. A at pp. 87-88.

    Plaintiff's underlying claims are based on destroyed evidence and the opinion of a person who is not an expert on fire causation. Plaintiff cannot even articulate a liability theory of how the fountain caused the fire. Ex. C at p. 4. Plaintiff's discovery is a pure fishing expedition. There is no information to be gained from the plaintiff's incredibly broad discovery requests that would relate to the disposition of defendants' motion for summary judgment.

**Failure to Confer**

Plaintiff's motion does not address the objections (relevance, over-breadth, undue burden) raised by defendants in their responses. While counsel conferred about defendants' request for a stipulated protective order, counsel never conferred about the merit of defendants' well-taken objections, or about narrowing the scope of the broad requests, as required by Civil Rule 37. If any case required a conference, this one does. At a minimum, defendants suggest that the court order a discovery conference to attempt to narrow the scope of pending discovery issues before a motion to compel ripens.

Further, with regard to much of plaintiff's requests regarding design and manufacturing information, defendants simply do not have that information. Despite plaintiff's suggestions to the contrary, defendants did not design or manufacture this fountain, which was noted in defendants' responses. As plaintiff is fully aware from the disclosure on the boxes of both the WFL-ROC and the WFL-ROCK, both models were made in China. See Exs. D and E. Plaintiff's suggestion

that defendants designed and manufactured the subject fountain, are not true.

**Relevance**

Nowhere does plaintiff's motion address defendants' relevance objections. Plaintiff's discovery requests relate to a model "WFL-ROC", which was a model different than the "WFL-ROCK" model at issue in this lawsuit. Thus, plaintiff's discovery requests ask for the wrong model.

**Over-Breadth and Undue Burden**

Moreover, plaintiff's motion does not address defendants' other objections of over-breadth and undue burden. Plaintiff's requests literally seek every piece of paper ever generated in connection with the design, manufacturing, testing, marketing and distribution of the ROC model.

The following list summarizes each of plaintiff's broad requests:

1. All design documents relating to the ROC;
2. All documents re design changes to the ROC;
3. All product literature re the ROC;
4. All board minutes relating to claims pertaining to the ROC or similar products;
5. All documents re marketing of the ROC;
6. All product literature for the ROC and similar products;

7. All communications between HoMedics and any distributor, which in any way touch upon the distribution of the ROC;
8. All newsletters/periodicals by HoMedics since 1987;
9. All videos re the ROC;
10. All orders, invoices and other similar documents re the ROC;
11. All product literature which accompanied the ROC;
12. All hazard warnings which accompanied the ROC;
13. All documents re any changes in the ROC;
14. All documents re any field experience with the ROC;
15. All documents re decisions to print warnings accompanying the ROC;
16. All documents re field experience or knowledge of any fires caused by the ROC and components or similar products;
17. All literature containing hazard warnings re the ROC;
18. All documents re modifications, retrofits, or warnings re previously sold ROCs;
19. All documents re virtues, qualities, capacities of the ROC;
20. All documents re any defective condition of the ROC or components;
21. All documents re any hazards/warnings of the ROC or components;
22. All test data re the ROC or components;
23. All documents re performance of the ROC or components;
24. All documents re potential of the ROC to start a fire;
25. All documents re placing of warnings on the ROC;
26. All documents re design, configuration, or construction of the ROC/components;
27. All documents, photos or videos re the ROC;
28. All documents re communications with customers, vendors, end users, engineers, fire or building code authorities, re the ROC;
29. All documents re fires caused by the ROC or similar products distributed by HoMedics;

    30.    All documents re any claims or suits involving the ROC or similar products;
    31.    All patents for the ROC or components;
    32.    All documents re testing/approval of the ROC;
    33.    All applicable primary, excess, insurance policies, including declaration sheets;
    34.    All applications for products liability coverage for any product sold by HoMedics;
    35.    All documents supporting affirmative defenses.  Ex. 9 to Plaintiff's Motion to Compel.

As the above summary indicates, plaintiff's requests are unlimited by time or reason – even though plaintiff has not been able to provide defendants with a theory of the case.

Such "all inclusive" requests go far beyond the claim at issue and address a product not even involved in the fire. See In re Multi-Piece Rim Prod. Liability Litig., 635 F.2d 671, 680 (D.C. cir. 1981)(affirming protective order "given the sweeping nature of [the]desired inquiry"); Premium Serv. Co. Sperry Hutchinson Co., 511 F.2d 225 (9th Cir. 1975) (upholding quashing unduly burdensome subpoena); In re Priceline.Com Inc. Sec. Litig., 233 F.R.D. 83 (2005) (discovery request that "defendants describe in detail any and all problems experienced with Priceline and WebHouse computer systems and websites during the Class Period and identify all persons with knowledge concerning such problems" denied as

OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND CROSS-MOTION FOR PROTECTIVE ORDER AND COMPUTATION OF DAMAGES

Jurisch v. Homedics, etc., et al., CASE NO. 3:06-cv-00127-TMB
PAGE 6

overbroad and unduly burdensome).  See also <u>United Oil Co., Inc. v. Parts Associates, Inc.</u>, 227 F.R.D. 404 (D. Md. 2005) (Interrogatory and request for production of documents that sought information about all licenses and certificates obtained by dye manufacturer in past 10 years, production of all licenses or certificates to sell products for past five years, and information as to whether licenses or certificates were suspended or revoked, whether renewal of licenses or certificates was refused or delayed, and surrounding facts were too broad and non-specific.  Therefore, order to compel production denied.)

As in the discovery requests discussed in the cases above, plaintiff simply seeks an enormous amount of information on the wrong model fountain.  Even if plaintiff sought information on the correct fountain, she has not reasonably tailored her request to relevant information. Rather, her requests, which go far beyond the claim at issue, are too broad, too general, and all-inclusive.

The burden alone is grounds for rejecting the discovery request, but when coupled with the immaterial nature of the request and the fact that plaintiff cannot articulate a theory

of liability, the burden becomes doubly onerous.  <u>See</u> <u>Frost v. Williams</u>, 46 F.R.D. 484 (D.Md. 1969) (a trial court does not abuse its discretion in sustaining objections to interrogatories which appear on their face to be wholly immaterial, cumulative, and unreasonably burdensome).

**<u>Plaintiff Has No Liability Theory</u>**

In order to compel discovery – especially such extremely burdensome discovery, defendant, and the court, must at least be informed of plaintiff's theory of liability.  Yet, plaintiff has not been able to articulate any theory of liability as to how the accident started.  In her discovery responses, plaintiff could not say whether plaintiff believes the product was defective due to design or was defective due to the way it was manufactured.  Ex. C hereto at p. 4. Plaintiff merely states that the fountain should not cause fires.  <u>Id.</u>

Plaintiff failed to preserve the subject fountain and plaintiff has failed to preserve all of the material physical evidence.  Now plaintiff seeks to conduct an impermissible fishing expedition to somehow compensate for the wholesale destruction of the physical evidence in this case.

In United Oil Co., 227 F.R.D. 404, the court ruled that a party could not be required to respond to a production request where responding counsel were required to decide what information tended to support a particular legal position. United Oil Co., 227 F.R.D. 404. The same principle is at issue here. By failing to articulate a theory of liability, defendants are put into the position of trying to determine plaintiff's theory before it can respond to the discovery requests. In these circumstances, a court may refuse to permit certain discovery and rule on a motion for summary judgment if the discovery sought does not pertain to the theory of liability used by the district court. See Home Savings Bank v. Resolution Trust Corp., 952 F.2d 1152, 1157 (9th Cir. 1991). Given that plaintiff has failed to articulate a theory of liability, the court may take up the motion for summary judgment and issue a ruling. See also Evans v. McDonald's Corp, 936 F.2d 1087, 1091 (10th cir. 1991) ("We do not believe that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case."); Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th

Cir. 1990) (putting the defendants through the time and expense of continued litigation on a new theory with the possibility of additional discovery would be manifestly unfair and prejudicial) (citations and internal quotation marks omitted).

Contrary to plaintiff's motion, this is not a case where there is only one logical source of ignition.  This is not a *res ipsa loquitor* case.  Although thoroughly discussed in defendant's motion for summary judgment, certain key issues bear reiterating here.

Captain Southwick testified that it would not be unusual for the candle wax to burn up in a fire.  Ex. A at p. 34.  The photographs show two candleholders on the end-table standing next to the subject fountain.  Ex. F.  Plaintiff confirmed in her deposition that the lattice-shaped item on the table was a candleholder.  Ex. B at p. 22; Ex. F-1.

Captain Southwick, however, was never told by plaintiff that there was a candleholder on the table.  Ex. A at pp. 79-80.  Southwick could not identify the object on the end-table that plaintiff identified as a candleholder.  Ex. A at p. 67.

Plaintiff also confirmed that there was a plant sitting on the end-table, however, plaintiff could not describe the plant or its leaves so as to assess whether it could have caught fire from a candle on the end-table.  Ex. B at p. 29.

Moreover, in her deposition, plaintiff could not identify another object sitting on the end-table.  Ex. B at pp. 83-84.  However, another view of the object clearly shows another potential candleholder.  Ex. F-2.  Thus, the photos arguably reveal two candleholders on the end-table sitting next to the fountain at issue.  Ex. F-2, F-2.

Moreover, if the fire did start from the fountain's cord, was the cord chewed on and damaged by one of plaintiff's two pets, or by some other process?  Was the fountain misused or the cord damaged by plaintiff in some fashion?  Neither the jury nor the defendants will be able to examine the fountain and its cord to assess those potentialities because plaintiff failed to preserve the critical physical evidence in this case.

Given the established facts of this case, plaintiff should be required to articulate a theory of liability before proceeding in her discovery requests.

### Fred Meyers/Kroger

As noted by the supplemental motions to dismiss of Fred Meyers and Kroger, there is no evidence that those entities sold the subject fountain. Christine King, who purchased the fountain as a gift for plaintiff, has attested that she bought the subject fountain from a Wal-Mart store. Ex. G hereto. Thus, the motion to compel against those entities should be denied and those entities should be dismissed, as they should never have been made a part of this suit.

### Insurance Policy

Federal Civil Rule 26(a)(1)(D) only requires the production of potentially applicable policies. Any insurance related documentation beyond Civil Rule 26(a)(1)(D)'s requirements, is irrelevant. HoMedics has a self-insured retention, and has an indemnity obligation to the other defendants and is paying for the defense of the defendants. Plaintiff has not provided a computation of her damages. However, she testified that she is claiming approximately $20,000 for un-reimbursed structural damage to her house, and approximately $40,000 for lost personal items.

This is not a case that has any realistic chance of producing an award in excess of HoMedic's self-insured retention. Therefore, the insurance policies should not be compelled, except under a protective order as discussed below.

### Award of Fees

Plaintiff's motion for fees should be denied.  There has been no conferral as to defendants' objection to narrow the scope of plaintiff's extremely broad and burdensome requests.

Plaintiff's discovery requests relate to the wrong model fountain.  Plaintiff cannot articulate to defendants how the fountain allegedly caused the fire.  Even though plaintiff cannot provide defendants with a theory of liability, and all of the material physical evidence has been destroyed, plaintiff's counsel refused to agree to a protective order.

### The Court Should Enter A Protective Order

Defendants hereby cross-move for a protective order with respect to certain documents which may be responsive to Plaintiff's First Set of Document Requests.  The draft protective order provided to counsel sought Plaintiff's agreement that only plaintiff, plaintiff's counsel and any experts would have access to documents designated as

Confidential, per the terms of the protective order.  The undersigned certifies that prior to filing this motion he conferred with plaintiff's counsel to obtain a stipulation on the protective order, but plaintiff's counsel refused to agree to a protective order.  Therefore, the issue of the protective order is ripe for this court's attention.  Fed. R. Civ. P. 26(c)(7).

This court has broad discretion to issue protective orders to protect a party's confidential commercial information.  According to the Ninth Circuit:

> **The law, however, gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information,** including, but not limited to, trade secrets or other confidential research, development, or **commercial information**.  See Fed. R. Civ. P. 26(c)(7). Rule 26(c) authorizes the district court to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden."  The Supreme Court has interpreted this language as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).  The Court continued, by noting that the "trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery.  The unique character of the discovery process requires that the trial court have substantial latitude to fashion

> protective orders." Id. (emphasis added); see also 8 Wright, Miller & Marcus, Federal Practice and Procedure, Civil § 2036, at 489 (2d ed. 1994) ("Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule.")[1]

Additionally, in deciding whether a party should be required to respond to a given discovery request, the court should weigh the relevance of the information sought against the burdensomeness of the request. Krypton Broadcasting of Jacksonville, Inc. v. MGM-Pathe Communications Co., 629 S.2d 852, 855 (Fla. 1994). Where the material sought is irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence, such material may not be discovered. Id. Given the sweeping nature of plaintiff's inquiry, the quantity of documents already made available, and the complete lack of a showing of any particularized need for more discovery, the court may properly exercise its discretion here and grant a protective order. In re Multi-Piece Rim Products Liability Litigation, 653 F.2d 671, 680 (D.C. Cir. 1981). As the above list delineating the discovery request

---

[1] Phillips v. General Motors Corporation, 307 F.3d 1206, 1211 (9th Cir. 2002)

OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND CROSS-MOTION FOR PROTECTIVE ORDER AND COMPUTATION OF DAMAGES

Jurisch v. Homedics, etc., et al., CASE NO. 3:06-cv-00127-TMB
PAGE 15

indicates, plaintiff is asking for a vast amount of irrelevant material.  See Schotthofer v. Hagstrom Construction Companys, 23 F.R.D. 666, 668 (S.D. Ill. 1958) (a party may be protected from the unreasonable and undue burden of responding to interrogatories requiring written answers involving minute factual details).

Defendants timely responded to Plaintiff's Document Requests, withholding only the following materials:

(1)  HoMedics' Quality File for the WFL-ROCK;

(2)  a report of HoMedics' orders to Fred Meyers and Wal-Mart;

(3)  copies of customer complaints, and

(4)  HoMedics' applicable insurance policies.

Wal-Mart has separately provided copies of pre-incident testing conducted by Consumer Testing Laboratories, Inc.  Ex. H.  Wal-Mart has also searched their files and found no flammability complaints with regard to the fountain.  Ex. H at p. 12; Supplemental Response to Request for Production No. 16.

HoMedics has fully cooperated in discovery, and has not refused to produce responsive materials.  On the contrary, HoMedics merely sought a protective order prior to producing

OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND CROSS-MOTION FOR PROTECTIVE ORDER AND COMPUTATION OF DAMAGES

Jurisch v. Homedics, etc., et al., CASE NO. 3:06-cv-00127-TMB
PAGE 16

certain materials, which it does not wish to have revealed to the general public.  It is Homedic's general practice to obtain a protective order prior to producing certain documents, including its quality files and customer complaints.  Plaintiff's counsel cannot justify a refusal to enter into such an order.

HoMedics merely seeks an agreement from plaintiff that only those individuals designated under the protective order will be allowed to view the materials disclosed.  HoMedics considers its quality files, order histories, consumer complaints, and insurance policies as confidential information and has a long history of treating these materials as confidential.  There is no prejudice to plaintiff in issuing the requested protective order.  The draft protective order provided to counsel would permit plaintiff, plaintiff's counsel and any expert to inspect materials produced under the protective order.

Given the plaintiff's lack of liability theory; and the utter destruction of the material physical evidence in this case, the court should exercise its broad latitude to grant a protective order with regard to the aforementioned materials.

If, after the files are produced to plaintiff, she believes that certain documents must be produced for the good of the public, the parties can re-confer, and if necessary, plaintiff can request that the court relax the protective order as to those particular documents.

Accordingly, it is requested that the court grant a protective order with respect to the materials identified above.

## II. CONCLUSION

Plaintiff's motion to compel is mooted by defendants' pending motion for summary judgment. Moreover, plaintiff's discovery requests seek irrelevant information; they are impermissibly overbroad, and unduly burdensome.

Should the court compel discovery prior to ruling on the motion for summary judgment, defendants request an order requiring the parties to meet and confer on the discovery issues. Defendants also request that plaintiff state a theory of liability so that, if required, defendants may produce relevant discovery limited to admissible issues.

Finally, defendants request that the court enter a protective order as to the information noted above.

Dated this 16th day of January, 2007, at Anchorage, Alaska.

<div style="padding-left: 2em;">

RICHMOND & QUINN
Attorneys for Defendant
FKA DISTRIBUTING CO. d/b/a
HOMEDICS, INC.

By: s/Kenneth M. Gutsch
_____
Kenneth M. Gutsch
RICHMOND & QUINN
360 K Street, Suite 200
Anchorage, AK 99501
Ph: (907) 276-5727
Fax: (907) 276-2953
kgutsch@richmondquinn.com
Alaska Bar No. 8811186

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 16th day of January, 2007, to:

Howard J. Meyer, Jr.
Walther & Flanigan
1029 W. 3rd Ave, Suite 250
Anchorage, AK 99501


s/Kenneth M. Gutsch
_____
     RICHMOND & QUINN

2222\001\Pld\Opp to motion to compel

OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND CROSS-MOTION FOR PROTECTIVE ORDER AND COMPUTATION OF DAMAGES

Jurisch v. Homedics, etc., et al., CASE NO. 3:06-cv-00127-TMB
PAGE 19